NOT FOR PUBLICATION                                      CASE CLOSED

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____
ADVANCED ACUPUNCTURE CLINIC, INC.       :
d/b/a/ ADVANCED THERAPY CLINIC, TODD    :
M. WULF, PA, SLP CHIROPRACTIC PA and    :
CASEY OIE, D.C. d/b/a/ BLAKE            :
CHIROPRACTIC and individually and on behalf :
of others similarly situated,           :      Civil Action No. 07-4925 (JAP)
                                        :
              Plaintiffs,               :      **OPINION**
                                        :
       v.                               :
                                        :
ALLSTATE INSURANCE COMPANY,             :
DEERBROOK INSURANCE COMPANY and         :
ENCOMPASS INSURANCE COMPANY OF          :
AMERICA,                                :
                                        :
              Defendants.               :
_____ :

Presently before the Court is the motion of Defendants, Allstate Insurance Company,

Deerbrook Insurance Company, and Encompass Insurance Company of America's (collectively,

"Defendants" or "Allstate") to dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(1)

and 12(b)(6), or, alternatively, for summary judgment, pursuant to Fed. R. Civ. P. 56.  The Court

has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1332.  Having considered all arguments

presented, the Court grants Defendants' motion to dismiss.

I.     **Background**

       Plaintiffs are all medical providers, located across the country.  Plaintiff, Advanced

Therapy Clinic ("Advanced Therapy"), is a Texas corporation with its principal place of business in Corpus Christi, Texas.  Plaintiff, Todd M. Wulf, PA, ("Wulf") is an Arkansas professional association with a business address in Rogers, Arkansas.  Plaintiff, Blake Chiropractic Center ("Blake Chiropractic") is a Minnesota sole proprietorship with a business address in Hopkins, Minnesota.  Plaintiff, SLP Chiropractic ("SLP") is professional association in Minnesota with a business address in St. Louis Park, Minnesota.  Defendants are foreign corporations, registered in Illinois, in the business of providing insurance, with their principal places of business in Northbrook, Illinois.  Defendants conduct and do business in New Jersey.

In the automobile insurance industry, medical payments coverage is a contractual form of "no-fault" coverage entered into between the insurance company and the insured for payment of medical bills.  Personal injury protection coverage ("PIP") also provides no-fault coverage for payment of medical bills.  No-fault, or MedPay, coverage provides for prompt medical treatment, up to policy limits, in order to mitigate harm and improve recovery from injury.  Coverage also helps relieve any anxiety individuals may have regrading the availability of funds for medical expenses.

Plaintiffs allege that Defendants utilize a fee review software ("fee review"), licensed from Mitchell Medical, which compares the amount billed for a procedure to percentile benchmarks an insurer selects.  If there is a portion of the charge that exceeds the benchmark, that portion of the claim is excluded from coverage.  The percentile benchmarks are embedded into the software and used to adjust and audit first-party claims for medical expenses.  Coverage exclusions are denoted in the "Explanation of Benefits" ("EOB") form, under the "Covered Amount" and "Reason Code(s)" sections, provided to Plaintiffs as codes "41" or "X41."  The

EOB states that the charges are compared to the prevailing billing practices for medical providers within the geographic area and that the reimbursement rate could differ from the actual amount billed.

As examples, Plaintiffs cite to several instances of reductions.  Plaintiffs claim that Wulf submitted a medical bill charge of $61.00, but Allstate only reimbursed $60.00 of the charge.  Thus, $1.00 was excluded from the submitted bill coverage.  Another instance involved a $34.17 medical charge submitted by Wulf.  Allstate reimbursed $33.00 of the charge, which excluded $1.17.  Plaintiffs also claim that SLP submitted a medical bill for a charge of $64.26, but Allstate only reimbursed $61.00 of that charge, which excluded $3.26 of coverage.  Plaintiffs allege that Blake Chiropractic submitted a medical bill charge of $71.91, but was only reimbursed $66.00, thus excluding $5.91 of coverage.  Lastly, Plaintiffs cite that Advanced Therapy submitted a medical charge of $35.00, but Allstate only reimbursed $33.00 of the charge, thus excluding $2.00 of coverage.  Plaintiffs received an EOB, which set forth the "Billed Amount," "Covered Amount," and "Reason Code(s)" as well as particular codes and a statement regarding the basis for the reduced payment.

The insurance policies between the insureds and Plaintiffs were executed in different states.  Allstate's policies with SLP and Blake Chiropractic were issued in Minnesota.  Both policies provided that Minnesota law governs any disputes.  Furthermore, to the extent there was a disagreement over coverage, in accordance with Minnesota law, disputes were required to be submitted to arbitration.  The policies stated:

> If the insured person and we don't agree on that person's right to recover damages
> on any claim involving the amount of $10,000 or less, the dispute will be settled
> by binding arbitration according to the Minnesota No-Fault Comprehensive or

Collision Damage Automobile Insurance Arbitration Rules.

Arnall Aff., Exhs. 4 at 14, 5 at 15.  Blake Chiropractic also entered into policies with Encompass

Insurance and Deerbrook Insurance.  Both policies were issued in Minnesota and provide that the

PIP benefits were provided in accordance with the Minnesota No-Fault Insurance Act.

Allstate's policy with Advanced Therapy was issued in Ohio.  Although Advanced

Therapy resides in Texas, the policy provides that Ohio law governs disputes, except that, where

a covered loss occurs outside of Ohio, the law of the jurisdiction where the covered loss occurred

may apply "only if the laws of that jurisdiction would apply in the absence of a contractual

choice of law provision such as this."  Def. Br., pg. 5.  Allstate's policy with Wulf was issued in

Arkansas, the policyholder resides in Arkansas, and the policy provides that Arkansas law

governs disputes.  *Id.*

## II.    Procedural History

On October 12, 2007, Plaintiffs filed the present action against Defendants.  Generally,

the Complaint alleges that Defendants' policies require payment of all reasonable expenses for

necessary medical services.  Plaintiffs claim that Defendants improperly use "computer-

generated bill review reports" to arbitrarily discount PIP claims for first-party medical benefits

below the amounts billed by the insured's medical providers based on the fee review's artificial

percentile reimbursement cap.

The Complaint contains one count for breach of contract.  Furthermore, Plaintiffs seek to

represent a class of insureds and/or their assignees, pursuant to Fed. R. Civ. P. 23.  The putative

class is named "Contract Class" and includes those insureds who sustained injuries in a covered

occurrence and:

> (a) submitted first-party claims for payment of medical expenses to Allstate; (b) had their claim submitted to Mitchell Medical fee review; (c) received payment in an amount less than the submitted medical charge (but greater than zero) based on a 41 or X41 reason code; and [(d)] did not exhaust policy limits.

Compl. ¶ 49.  Alternatively, the Complaint identifies a second putative class named "Alternative Contract Class."  The alternate class membership is based on the same criteria as the first class, but limited to insureds in Arkansas, California, Colorado, Florida, Georgia, Illinois, Kansas, Maryland, Minnesota, New York, New Jersey, North Carolina, Ohio, Oregon, Pennsylvania, Tennessee, Texas, Virginia and Washington.  *Id.*

By Order dated November 16, 2007, in a related case, because a number of similar cases were simultaneously being filed by Plaintiffs' counsel and in the interests of judicial economy, the Court ordered a case management conference to be scheduled.  On March 18, 2008, Defendants filed their motion to dismiss Plaintiffs' Complaint, pursuant to Fed. R. Civ. P. 12(b)(1) or 12(b)(6), or, alternatively, for summary judgment.  Defendants also filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6), or to strike class allegations.  Plaintiffs oppose the motions.  On March 20, 2008, the Court held the case management conference.  Having reviewed the parties' submissions, the Court now decides the motions.

## III.    Standard of Review

Federal Rule of Civil Procedure 12(b)(1) allows a party to move for dismissal of a case based on lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  The plaintiff bears the burden of proving that subject matter jurisdiction properly exists in the federal court.  *Mortensen*

*v. First Federal Sav. and Loan Ass'n.*, 549 F.2d 884, 891 (3d Cir. 1977).  When considering a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1), "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Id.*

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  In considering a Fed. R. Civ. P. 12(b)(6) motion, a court accepts as true all of the factual allegations within the complaint and any reasonable inferences that may be drawn from them.  *Hayes v. Gross*, 982 F.2d 104, 106 (3d Cir. 1992).  Claims should be dismissed under Fed. R. Civ. P. 12(b)(6) where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).  Though a court must take as true all facts alleged, it may not "assume that the [plaintiff] can prove any facts that it has not alleged." *Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters,* 459 U.S. 519, 526 (1983).  Further, on a Fed. R. Civ. P. 12(b)(6) motion, a court shall properly reject any "conclusory recitations of law" pled within the complaint.  *Commonwealth of Pennsylvania v. PepsiCo, Inc.,* 836 F.2d 173, 179 (3d Cir. 1988); *see Morse v. Lower Merion School Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (noting that "a court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss").

Accordingly, a district court reviewing the sufficiency of a complaint has a limited role. In performing that role, the court determines not "whether the plaintiffs will ultimately prevail," but "whether they are entitled to offer evidence to support their claims. *Langford v. Atlantic*

-6-

*City,* 235 F.3d 845, 847 (3d Cir. 2000); *see also In re Burlington Coat Factory Sec. Litig.,* 114

F.3d 1410, 1420 (3d Cir. 1997); *Syncsort Inc. v. Sequential Software, Inc.,* 50 F. Supp. 2d 318,

325 (D.N.J. 1999); *In re MobileMedia Sec. Litig.,* 28 F. Supp. 2d 901, 922 (D.N.J. 1998).

Generally, the court's task requires it to disregard any material beyond the pleadings.  *Burlington*

*Coat,* 114 F.3d at 1426; *Pension Benefit Guar. Corp. v. White Consol.  Indus.,* 998 F.2d 1192,

1196 (3d Cir. 1993).

A district court may, however, consider the factual allegations within other documents,

including those described or identified in the complaint and matters of public record, if the

plaintiff's claims are based upon those documents.  *Burlington Coat,* 114 F.3d at 1426; *In re*

*Westinghouse Sec. Litig.,* 90 F.3d 696, 707 (3d Cir. 1996); *In re Donald Trump Sec. Litig.*, 7 F.3d

357, 368 n.9 (3d Cir. 1993); *Pension Benefit Guar. Corp.,* 998 F.2d at 1196.  In other words, the

court may review such documents that are "integral to or explicitly relied upon in the complaint,"

*Burlington Coat,* 114 F.3d at 1426 (citation and quotations omitted), so as to avoid

> [t]he situation in which a plaintiff is able to maintain a claim of fraud by
> extracting an isolated statement from a document and placing it in the complaint,
> even though if the statement were examined in the full context of the document,
> it would be clear that the statement was not fraudulent.

*Id.*  Yet just because the court elects under these circumstances to examine documents outside of

the complaint does not mean that it need treat the motion as one for summary judgment.

*Burlington Coat,* 114 F.3d at 1426; *Pension Benefit Guar. Corp.,* 998 F.2d at 1196-97.

## III.    Legal Discussion[1]

---

[1] Defendants also argue that the Court should grant their motion to dismiss because Plaintiffs fail
to allege proper assignment of the insureds' claims and several of the policies contain a non-assignment
provision.  The Court, however, declines from addressing this issue due to equitable arguments made by

A.      *Arbitration Provision*

In determining whether an arbitration provision is enforceable, a court should reference

federal law.  *See Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) ("Questions

concerning the interpretation and construction of arbitration agreements are determined by

reference to federal substantive law.").  The Federal Arbitration Act ("FAA") requires

enforcement of a contractual arbitration provision.  The Act, in relevant part, states:

> A written provision in any...contract evidencing a transaction involving commerce
> to settle by arbitration a controversy thereafter arising out of such contract...or an
> agreement in writing to submit to arbitration an existing controversy arising out of
> such a contract...shall be valid, irrevocable, and enforceable, save upon such
> grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.  "By its terms, the [FAA] leaves no place for the exercise of discretion by a district

court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on

issues as to which an arbitration agreement has been signed."  *Dean Witter Reynolds, Inc. v.

Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

In *Gay v. CreditInform*, 511 F.3d 369 (3d Cir. 2007), the Third Circuit reiterated the

FAA's strong presumption in favor of arbitration.  The appellant in *Gay* brought a class action

suit against the appellee, who provided credit repair services.  The agreement entered into

between the appellant and appellee contained a provision that any claim arising out of or relating

to the product would be settled by arbitration.  The appellant argued that the claims were not

arbitrable because the Credit Repair Organizations Act ("CROA") and the Pennsylvania Credit

Services Act protected her right to assert her claims in a judicial forum and the CROA protected

---

Plaintiffs' counsel and will limit its analysis to the other issues raised.

her right to bring a class action.  The district court ordered the parties to arbitrate on an individual

basis, and the appellant appealed.  On appeal, the Third Circuit affirmed.  The Third Circuit

reasoned that nothing in the statutory history expressed any legislative intent to preclude the

parties from arbitrating their dispute.  The court explained that "in determining whether a matter

should be arbitrated, there is a strong presumption in favor of arbitration, and doubts concerning

the scope of arbitrable issues should be resolved in favor of arbitration."  *Gay*, 511 F.3d at 387

(internal citations omitted).

"In interpreting [arbitration] agreements, federal courts may apply state law, pursuant to

section two of the FAA."  *Harris*, 183 F.3d at 179.  Minnesota's Uniform Arbitration Act

provides:

> A written agreement to submit any existing controversy to arbitration or a provision
> in a written contract to submit to arbitration any controversy thereafter arising
> between the parties is valid, enforceable, and irrevocable, save upon such grounds
> as exist at law or in equity for the revocation of any contract.

MINN. STAT. § 527.08 to 572.30.  Blake Chiropractic and SLP entered into a binding, written

agreement with Allstate to submit to arbitration if disputes over coverage arose.  In relevant part,

the policies stated:

> If the insured person and we don't agree on that person's right to recover damages
> on any claim involving the amount of $10,000 or less, the dispute will be settled
> by binding arbitration according to the Minnesota No-Fault Comprehensive or
> Collision Damage Automobile Insurance Arbitration Rules.

Arnall Aff., Exhs. 4 at 14, 5 at 15.  Moreover, the Deerbrook and Encompass policies that cover

the remaining Blake Chiropractic insureds were issued in Minnesota in accordance with

Minnesota's No-Fault Automobile Insurance Act, which requires mandatory arbitration of all PIP

payment disputes of $10,000 or less.  *See* MINN. STAT. § 65B.525 ("...mandatory arbitration of all

cases at issue where the claim at the commencement of arbitration is an amount of $10,000 or less...").

Blake Chiropractic and SLP assert that Minnesota's statute is narrowly construed in that no-fault arbitrators are limited to deciding factual issues and that "arbitrators may not decide complex questions of law." This argument fails. While the court in *Weaver v. State Farm Ins. Companies*, 609 N.W.2d 878 (Minn. 2000), recognized that "no-fault arbitrators are limited to deciding questions of fact, leaving the interpretation of law to the courts," the court then acknowledged that "[Minnesota courts] have adopted rules authorizing arbitrators in no-fault cases where the claim is for less than $10,000 to 'grant any remedy or relief deemed just and equitable.'" *Weaver*, 609 N.W.2d at 882 (citing Rule 32 Rules of Procedure for No-Fault Arbitration and MINN. STAT. § 65B.525). Thus, the present dispute is covered by the arbitration provision.[2]

Additionally, Plaintiffs argue that "'the claims' at issue here is not limited to the individual underpayments to Plaintiffs but instead encompasses the 'amount in controversy' Plaintiffs are seeking on behalf of themselves and the proposed class." Pl. Opp. to Dismiss, pg. 24. Plaintiffs' Complaint, however, is based on the alleged "underpayments" of medical expenses reimbursement; without these individual "underpayments," Plaintiff would have no

---

[2] Even under New Jersey law, the arbitration provision in the Policy is binding. N.J.S.A. 39:6A-5.1 allows either a claimant or insurer to demand dispute resolution and that medical-provider assignees are bound by that decision. *See also Coalition for Quality Healthcare v. N.J. Dept. of Banking and Ins.*, 348 N.J. Super. 272, 318 (N.J. Super. Ct. App. Div. 2002) (explaining that "an insurer is permitted to require the submission of PIP disputes to the dispute resolution process" and "because a provider, with valid assignment, is bound by the same rights and remedies as an insured, the provider can be similarly bound to submit a PIP to dispute resolution"). Furthermore, N.J.S.A. 2A:23B-6 explicitly provides that "[a]n agreement in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J.S.A. 2A:23B-6.

complaint.  The Complaint clearly challenges Defendants' reimbursement payments to Plaintiffs

under the policies' PIP coverage.  Thus, the only claims at issue are those of these Plaintiffs, and

all of their underpayment disputes clearly fall within the ambit of Minn. Stat. 65B.525.[3]

Furthermore, because the disputed claim does not encompass the larger claim that Plaintiff has

asserted in its Complaint, Plaintiff's claim does not exceed the $10,000 controversy threshold of

Minn. Stat. 65B.525.

Therefore, the Court finds that, pursuant to both federal and state law, the Blake

Chiropractic and SLP policies mandate arbitration, and the Complaint is subject to dismissal on

that basis alone.[4]

### B.    *Venue and* Forum Non Conveniens

Title 28, Section 1391 of the United States Code provides, in relevant part:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may,
> except as otherwise provided by law, be brought only in...(2) a judicial district in
> which a substantial part of the events or omissions giving rise to the claim
> occurred...(3) a judicial district in which any defendant is subject to personal
> jurisdiction at the time the action is commenced, if there is no district in which the
> action may otherwise be brought.

28 U.S.C. § 1391(a).  This District is not the only venue this action could have been brought.  A

---

[3] In addition, because the Court finds that the amount in controversy is a cumulative total of $13.34, Plaintiffs fail to establish the Court's jurisdiction pursuant to 28 U.S.C. § 1332(a).

[4] Plaintiffs argue that if the Court finds the arbitration provision is binding, then the Court should compel class-wide arbitration.  The Court declines to do so.  Procedural questions of the arbitration are not for the Court to decide, but rather, the arbitrator.  *See Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003) (finding that questions of whether the arbitration provision allowed for class arbitration should be left to the arbitrator); *Certain Underwriters at Lloyd's v. Westchester Fire Ins. Co.*, 489 F.3d 580, 590 (3d Cir. 2007) (holding that "in light of the [ ] authority, the parties' agreement to arbitrate their disputes, contractual silence as to the consolidation issue, and the longstanding federal policy favoring arbitration, [the court sees] no reason why this procedural issue should not be resolved in arbitration).

substantial part of the events giving rise to Plaintiffs' claims occurred elsewhere.  The insurance policy, which applies to the insured treated by Wulf in Arkansas, expressly provides that Arkansas law applies.  The insurance policy, which applies to the patient treated by Advanced Acupuncture was issued in Ohio and provides that Ohio law applies, except where the covered law occurred elsewhere, in which case the law of the forum where the loss occurred applies.  The insured treated by Advanced Therapy was injured in a motor vehicle accident in Texas, treatment occurred in Texas, and the disputed payments were sent to Advanced Acupuncture in Texas.  Wulf and Advanced Therapy's claims should have been brought in the districts of Arkansas and Texas, respectively.

Furthermore, "a district court may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 127 S. Ct. 1184, 1192 (2007).  While a plaintiff's choice of forum should "rarely be disturbed, a federal court may resist imposition upon its jurisdiction even when jurisdiction is authorized by the letter of a general venue statute." *Windt v. Qwest Communs. Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008) (internal quotations omitted).

In evaluating a *forum non conveniens* dismissal, a district court must make several determinations.  First, the court must determine whether an alternative forum could hear the case. If an alternative forum exists, the court must determine the amount of deference to be given to the plaintiff's choice of forum.  Lastly, the district court must balance the relevant public and private interests.  If the balance of factors "would result in oppression or vexation to the defendant out of all proportion to the plaintiff's convenience, the district court may, in its

discretion, dismiss the case on *forum non conveniens* grounds." *Id.* at 190.

Here, as already established, several alternative forums exist.  Wulf's claims would be proper before an Arkansas district court, as the insurance policy, which applies to the insured treated by Wulf in Arkansas, expressly provides that Arkansas law applies.  Advanced Therapy's claims would be proper before a Texas district court as the insured treated by Advanced Therapy was injured in a motor vehicle accident in Texas, treatment occurred in Texas, and the disputed payments were sent to Advanced Acupuncture in Texas.

The Court attaches little deference to Plaintiffs' choice of forum.  Beyond Plaintiffs' allegations that "Allstate does substantial business in this District" and that "New Jersey is one of Allstate's largest markets in terms of policies sold and PIP claims adjusted," there is no connection between this District and the insurance policies of the insureds treated by Wulf and Advanced Therapy.  Compl. ¶ 11.  At best, Plaintiffs appear to have brought this action in this District because it is related to other cases before the Court.  The Court, however, has dismissed those related cases; therefore, a low level of deference is given to Plaintiffs' choice of forum.

A district court must then balance private interest factors, involving the convenience of the litigants, with public interest factors, affecting the convenience of the forum.  Factors relating to the private interests of the litigants include "the relative ease of access to sources of proof...the cost of obtaining attendance of willing witnesses...and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Windt*, 529 F.3d at 189.  Public interest factors include "local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the state law that must govern the case; [and,] the avoidance of unnecessary problems in conflict of laws." *Id.* (internal quotations

omitted).

The balance of the factors leads the Court to dismissal of the present action.  As previously stated, the insured treated by Advanced Therapy was injured in Texas, Advanced Therapy is located in Texas, and the disputed fees were sent to Texas.  Moreover, the insured's policy states that Texas law would apply in this situation.  Additionally, the insured treated by Wulf in Arkansas has a policy that provides Arkansas law applies.  The convenience of the litigants and the public interest in having a trial where the controversy occurred and a forum that is home of the state law that must govern the case favors a dismissal of this action.

C.      Class Action Certification[5]

"A defendant may move to strike class allegations prior to discovery in rare cases where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met."  *Clark v. McDonald's Corp.*, 213 F.R.D 198, 205 n.3 (D.N.J. 2003) (citing *Miller v. Motorola, Inc.*, 76 F.R.D. 516 (N.D. Ill. 1977).  The Court finds that not only are Plaintiffs unable to represent a class, as Plaintiffs are obligated to submit its claims to arbitration, but each potential class member would also be required by their policies and/or state law to submit any dispute to arbitration.  Moreover, maintenance of a class action is not possible because Plaintiffs do not satisfy the requirements of Fed. R. Civ. P. 23.

Class actions are governed by Fed. R. Civ. P. 23.  A proposed class representative seeking class certification must satisfy all four requirements of Fed. R. Civ. P. 23(a) and must also

_____

[5] Plaintiffs propose two subclasses for the class action.  The Court adopts its reasoning for both subclasses.

demonstrate that the action is maintainable under one of the three categories set forth in Fed. R. Civ. P. 23(b).  *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 140 (3d Cir. 1998).  In addition, a class must be adequately defined so that the individual class members may be easily identified.  *See See, e.g. In re School Asbestos Litig.*, 789 F.2d 996, 1005 (3d Cir. 1986), *cert. denied* 479 U.S. 852 (1986).  The burden of "establish[ing] that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met" rests with the plaintiff.  *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994).  Courts must undertake a "rigorous analysis" to ensure that the putative class and its proposed representative satisfy each of the prerequisites to class certification.  *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982).

In considering whether certification is appropriate, a court must refrain from conducting a preliminary inquiry into the merits of the action.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974).  However, it may be necessary for the court "to analyze the elements of the parties' substantive claims and review facts revealed in discovery in order to evaluate whether the requirements of Rule 23 have been satisfied."  *In re Ford Motor Co. Ignition Switch*, 174 F.R.D 332, 339 (D.N.J. 1997).

> ### i.      *Fed. R. Civ. P. 23(a) Requirements*

Federal Rule of Civil Procedure 23(a) provides that:

[o]ne or more members of a class may sue or be used as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

**Numerosity.**  "Numerosity requires a finding that the putative class is 'so numerous that joinder of all members is impracticable.'"  *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 182 (3d Cir. 2001) (quoting FED. R. CIV. P. 23(a)(1)).  Here, it is clear the numerosity requirement is met as Plaintiffs allege that thousands of potential class members exist and joinder would be impracticable.  Compl. ¶ 51.

**Commonality.**  Commonality requires the existence of questions of law or fact common to members of the proposed class.  FED. R. CIV. P. 23(a)(2).  "A finding of commonality does not require that all class members share identical claims...'the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'"  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 310 (3d Cir. 1998) (quoting *Baby Neal*, 43 F.3d at 56)).  This requirement is substantially less then than the predominance requirement of Fed. R. Civ. P. 23(b)(3).

Plaintiffs assert, generally, that "the claims of Plaintiffs and the Class arise from the same practice and are all based upon the same legal theories."  Compl. ¶ 53.  This common thread is adequate to establish commonality between all potential class members' claims.

**Typicality.**  Class representatives must be typical of the class as a whole in order for the class to be certified.  FED. R. CIV. P. 23(a)(3).  In considering the typicality requirement, a court must determine whether "the named plaintiff's individual circumstances are markedly different or...the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based."  *Eisenberg v. Gagnon*, 766 F.2d 770, 786 (3d Cir. 1985) (internal citation omitted).  *See also Hoxworth v. Blinder, Robinson & Co.*, 980 F.2d 912,

-16-

923 (3d Cir. 1992) (finding typicality if the circumstances "arise[] from the same event or practice or course of conduct that gives rise to the claims of the class members, and ... [are] based on the same legal theory") (internal citation omitted).  Conversely, a representative's claims would be atypical if his "factual or legal stance is not characteristic of that of the other class members." *Weiss v. York Hosp.*, 745 F.2d 786, 810 (3d Cir. 1984).

Typicality  "does not mandate that all putative class members share identical claims." *Barnes*, 161 F.3d at 141.  So long as "the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." *Newton*, 259 F.3d at 183-84.  A claim "framed as a violative practice can support a class action embracing a variety of injuries so long as those injuries can all be linked to the practice." *Baby Neal*, 43 F.3d at 63.  Here, although factual differences exist, because Plaintiffs allege that Defendants have engaged in fraudulent conduct by utilizing the fee review and not fully reimbursing Plaintiffs and other class members, the typicality requirement is met.

**Adequacy.**  Adequacy requires a court to consider whether "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *see also East Tex. Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977) ("a class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members") (quoting *Schlesinger v. Reservists Comm. to Stop the War*, 418 U.S. 208, 216 (1974)).  "The Rule 23(a)(4) analysis involves a two-pronged inquiry: (1) whether the named plaintiffs' counsel is competent by qualification and experience to conduct the litigation, and (2) whether the named plaintiffs' interests are antagonistic to those of the class." *Cannon v. Cherry Hill Toyota, Inc.*, 184 F.R.D. 540, 544 (D.N.J. 1999).  The adequacy of representation

requirement overlaps with Rule 23(a)(2)'s commonality requirement and Rule 23(a)(3)'s typicality requirement, to the extent that all three requirements call for the Court to determine whether judicial economy and the procedural due process rights of the putative class members will be served by the certification of the class.  *Falcon*, 457 U.S. at 157 n. 13.

Plaintiffs argue that they could adequately represent the class because class members, whether an insured or a medical provider, have the same interest in having their medical bills reimbursed in full.  Furthermore, Plaintiffs assert that the class definition contemplates any potential conflicts between insured class members and medical provider class members; class membership would not include: individuals whose claims were submitted to Defendants' special investigative/fraud unit, MedPay claims that were denied for non-fee review based reasons, claims paid pursuant to a state's automobile fee schedule where the code was a scheduled fee and payment was made in the amount of the scheduled fee, or any individuals with a controlling interest in the insurer or those individuals' immediate family members.  Compl. ¶ 50.

Despite Plaintiffs' class definition, Plaintiffs could not adequately represent the class. Because Plaintiffs must submit their claim to binding arbitration in Minnesota, Plaintiffs could not properly appear before the Court, let alone adequately represent an entire class of insureds and medical providers before the Court.  Therefore, the Court finds the adequacy requirement of Fed. R. Civ. P. 23(a)(4) is not met, and the Court will not certify the class.

ii.      *Fed. R. Civ. P. 23(b)(2) Requirements*[6]

---

[6] Even if the Court had found that the requirements of Fed. R. Civ. P. 23(a) had been met, the Court would still decline to certify the class because Plaintiffs would be unable to meet requirements for maintaining a class action under Fed. R. Civ. P. 23(b)(2) or (b)(3).

Once a plaintiff has demonstrated that it has met the prerequisites of Fed. R. Civ. P. 23(a), a plaintiff must meet one of the three requirements of Fed. R. Civ. P. 23(b).  Class certification, pursuant to Fed. R. Civ. P. 23(b)(2), is appropriate if:

> [T]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

FED. R. CIV. P. 23(b)(2).  Courts in this circuit have held "that 23(b)(2) is only applicable where the relief sought is exclusively or predominately injunctive or declaratory in nature...[c]onversely, 23(b)(2) has been held inapplicable when the relief sought in the complaint is predominately money damages."  *Angelastro v. Prudential-Bache Securities, Inc.*, 113 F.R.D. 579, 583 (D.N.J. 1986) (internal citations omitted).

Although Plaintiffs allege that class certification is proper pursuant to Fed. R. Civ. P. 23(b)(2), *see* Compl. ¶ 61, Plaintiffs only seek monetary relief in their Complaint for breach of contract.  Plaintiffs do not request declaratory relief from the Court.  Accordingly, Plaintiff's motion to certify the class based upon Fed. R. Civ. P. 23(b)(2) is denied.

### iii.    *Fed. R. Civ. P. 23(b)(3) Requirement*s

For class certification under Fed. R. Civ. P. 23(b)(3), the requirements of predominance and superiority must be met.

### a.    Predominance

Predominance demands "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members."  FED. R. CIV. P.

23(b)(3).  "Unlike commonality, predominance is significantly more demanding, requiring more than a common claim."  *Newton*, 259 F.3d at 187.  Class treatment is inappropriate where individual questions regarding the claims overpower the common ones.  *See In re Merrill Lynch, et al. Sec. Litig.*, 191 F.R.D. 391, 396 (D.N.J. 1999) (reasoning that although there may be "several common questions...class treatment was inappropriate because 'each of the individual plaintiff's claim raises radically different factual and legal issues from those of other plaintiffs...'") (quoting *Georgine v. Amchem Prods.*, 83 F.3d 610, 618 (3d Cir. 1996)).  Predominance has not been found in cases where "significant individual issues surround[] each claim."  *Newton*, 259 F.3d at 189.

"The chief difficulty in finding a predominance of common legal issues [occurs when] statutory protections vary greatly from state to state."  *Ford Motor Co.*, 194 F.R.D. 484, 489 (D.N.J. 2000).  Applying numerous state laws, even if the slightest differences exist between the laws, can render a class action unmanageable.  *See id.* at 491 ("[T]he practicalities of applying such varied state law would demand significant attention from [a court], not the least of which would be instructing the jury or juries consistent with the law of each relevant state."); *see also In re Am. Med. Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action.").

The existence of variations in state law alone, however, is not enough to preclude class certification.  *See, e.g. School Asbestos*, 789 F.2d at 1011 (affirming the conditional class certification despite the practical manageability problems because of the nature of asbestos

litigation).  It is up to the district court to determine whether variations in state law defeat predominance.  *See Ford Motor Co.*, 174 F.R.D. at 349 ("'Prior to certification the district court must determine whether variations in state law defeat predominance.'") (quoting *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 750 (5th Cir. 1996)).

The Court finds that granting certification to the class would render the action unmanageable for several reasons.  First, New Jersey choice of law rules require that the Court apply the laws of the class members' home states.  In a diversity case, the forum state's choice of law rule governs.  *See Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3d Cir. 1992) ("As this is a diversity case, we apply the forum state's choice of law rule.").  Because insurance policies are construed as contracts between the insurance company and the policyholder, "the law of the place where the contract is to be performed is the law which governs as to its validity and interpretation."[7]  *London Assurance v. Companhia De Moagens Do Barreiro*, 167 U.S. 149, 160 (1897).  New Jersey follows this rule.  *See State Farm Mut. Auto. Ins. Co. v. Simmons' Estate*, 84 N.J. 28, 37 (N.J. 1980) ("in an action involving the interpretation of an automobile liability insurance contract, the law of the place of the contract will govern the determination of the rights and liabilities of the parties under the insurance policy").

Plaintiffs contend that "generally applicable contract law governs Plaintiffs' claims" and

---

[7] Plaintiffs argue that "New Jersey follows a flexible governmental interest analysis on an issue-by-issue basis."  Pl. Opp. to Strike Class, pg. 7.  This is true for tort cases.  *See e.g. Fu v. Fu*, 160 N.J. 108, 118 (N.J. 1999) ("In tort cases, New Jersey has rejected the traditional rule of *lex loci delicti*...instead, we now apply a more flexible 'governmental-interest' test that seeks to apply the law of the state with the greatest interest in governing the specific issue in the underlying litigation.") (internal citations omitted).  The supporting case Plaintiffs cite, *Erny v. Estate of Merola*, 171 N.J. 86 (N.J. 2002), was a tort case involving joint and several liability in a motor vehicle accident.  Because the present action involves an insurance policy, the Court will follow the established choice-of-law rules for contracts.

that they "are not challenging the individual determinations of reasonableness for the claims of individual class members, but the uniform process that Defendants apply to all claims."  Pl. Opp. to Strike Class, pg. 7-8.  However, in determining whether Defendants breached the insurance policy, by not paying "reasonable medical expenses" as Plaintiffs allege, the Court must first address whether the uncovered medical expenses were reasonable or unreasonable.  This analysis, therefore, requires the application of the different state laws contained in the express provisions of the policies.  For instance, the Court must look to Minnesota law, as expressly provided in the policy, when determining whether Defendants paid for the "reasonable" expenses of the insured.  In making this determination, the Court would consider the policy terms and Minnesota's PIP laws.  Minnesota law, however, would not apply to a class member whose policy was entered into in another state.  Therefore, because the class potentially includes plaintiffs from each of the fifty states, fifty different state laws could apply to the insurance policies, rendering the class action unmanageable.

Furthermore, Plaintiffs claim that "numerous cases have either certified exactly the same type of claims at issue here...or reversed lower courts' denial of certifications."  Pl. Opp. to Strike Class, pg. 9.  The cases Plaintiffs cite are not controlling.[8]  Moreover, a closer look at *LaBerenz v. Am. Family Mut. Ins. Co.*, 181 P.3d 328 (Colo. Ct. App. 2007) and *Reyher v. State Farm Mut. Auto. Ins. Co.*, 171 P.3d 1263 (Colo. Ct. App. 2007) reveals a different conclusion.  In *LaBerenz*, although the appellate court reversed the lower court's denial of class certification as to the

---

[8] *Goodman v. Mercury Ins. Co.*, J.C.C.P. No. 4249 (Cal. Sup. Ct. Jan. 11, 2007), *Strawn v. Farmers Ins. Co. of Oregon*, Case No. 9908-09080 (Or. Cir. Ct. Jun. 15, 2005), and *Coffell v. Allstate Ins. Co.*, No. 05-2-33183-6SEA (Wash. Sup Ct. Nov. 9, 2006) were decided outside of this circuit. Furthermore, the courts' reasoning in these decisions do not fully address the issues Defendants raise as to why the Court should not certify the class.

health provider members, it remanded the matter for further findings.  The class action requirements of Colo. R. Civ. P. 23 mirror those of Fed. R. Civ. P. 23.  The appellate court found that the lower court improperly held that the health providers did not meet the numerosity and typicality requirements of Colo. R. Civ. P. 23(a), but the matter was remanded for further findings as to whether the action met the adequacy requirements of Colo. R. Civ. P. 23(a)(4), as well as the additional requirements under Colo. R. Civ. P. 23(b), in order to certify the class. Similarly, in *Reyher*, the trial court had originally granted summary judgment in favor of the insurer, which the court determined rendered the class action claims moot.  On appeal, the court reversed the summary judgment decision and remanded the case to revisit whether the class should be certified.

Plaintiffs also cite to *Brooks v. Educators Mut. Life Ins. Co.*, 206 F.R.D. 96 (E.D. Pa. 2002).  Plaintiffs assert that the *Brooks* court certified a class "where the plaintiffs allege[d] that insurers engage[d] in common courses of conduct against their insureds" and that the "rationale supporting certification in *Brooks* applies with equal force to this case."  Pl. Opp. to Strike Class, pgs. 9, 11.  The plaintiffs in *Brooks*, however, instituted a single claim action - that the insurer failed to pay for anesthesia services in accordance with its policies, in violation of the Employee Retirement Income Security Act, 29 U.S.C. § 1001.  Unlike the present action, the *Brooks* complaint contained no allegations of state law; addressing one federal law is much more manageable than fifty varying state laws.

Second, the laws of each of the potential class members' home states conflict.  PIP insurance coverage differs between states and are governed by statute.  PIP statutes address issues such as specifying what type of medical expenses must be covered, what amounts insurers

are obligated to pay, or whether insurers are permitted to coordinate their PIP payments for medical expenses with payments from other sources.  A survey of the relevant PIP statutes indicates that differences, such as these, result in individualized issues.

Plaintiffs contend that differing PIP statues among states is irrelevant.  Plaintiffs argue that their assertion that "the software reductions are arbitrary...[] bear no relationship to whether a charge is 'reasonable' or 'unreasonable.'"  Pl. Opp. to Strike Class, pg. 12.  The Court disagrees.  Plaintiffs are entitled to reimbursements of "reasonable" medical expenses.  If the amounts Plaintiffs received from Defendants are "reasonable," regardless of how the reimbursements were calculated, then there is no breach of the policy.  Determining whether the reimbursements were "reasonable" or "unreasonable," in light of the states' varying statutes, would be unmanageable as a class action.

Third, although some courts have held that medical review tools may be questioned, they cannot be addressed in a class-based proceeding because an individualized evaluation must be conducted in determining the reasonableness and necessity of medical bills.[9]  In *Ralph v. Am. Family Mut. Ins. Co.*, 835 S.W.2d 522 (Mo. Ct. App. 1992), the plaintiff filed a class action complaint on behalf of persons insured by the defendant who had not received full medical payment benefits as a result of a set-off provision in the policy, which reduced medical payments by the amount received under uninsured motorist coverage.  Because the Missouri Supreme Court declared in another case that this type of set-off provision was invalid, the trial court in

---

[9] Additionally, the Court considers that because class membership could potentially include individual insureds, solo practitioners, group practitioners, or other types of medical providers, individual inquiries into what is "reasonable" for each type of insured or medical provider seeking reimbursement would be necessary.

*Ralph* denied class certification since the question of the set-off provision's validity was no

longer an issue common to the class.  The appellate court affirmed and reasoned that

> "the issues remaining in cases to recover medical payments were fact questions
> such as whether the policy contains medical payment coverage, the amount of
> medical treatment, whether that treatment was necessary, whether the charges are
> reasonable, and whether the treatment was for injuries sustained in the accident.
> All of those questions are specific to the individual claimant, not common to the
> class."

*Ralph*, 835 S.W.2d at 524.  *See also Creveling v. Gov't Employees Ins. Co.*, 828 A.2d 229, 242

(Md. 2003) (explaining that whether the medical treatment received was necessary and related to

the accident and whether the treatment fees were reasonable would have to be determined on an

individual basis).

       In *State Farm Mut. Auto. Ins. Co. v. Sestile*, 821 So. 2d 1244 (Fla. Dist. Ct. App. 2002),

State Farm's policy was to reimburse the insured for 80% of the reasonable charges incurred for

necessary medical treatments for automobile accidents.  The insureds' filed a declaratory action

asserting that State Farm's use of a computer-generated database to determine the reasonableness

of insureds' medical bills violated Florida law and the insurance policy.[10]  The court reversed the

lower court's ruling that an insurer could not decline to pay less than the entire medical bill of an

insured based on the computerized bill review.  The court reasoned that it is "not a court's

function to determine, across the board, that an insurer's internal method of gauging

---

    [10] Plaintiffs interpreted the relief the *Sestile* insureds requested to be "that the court issue a
declaratory judgment holding that no insurance company could use computer software to determine
'reasonableness,' *ever*."  Pl. Opp. to Strike, pg. 14 (emphasis in breif).  Contrary to Plaintiffs'
interpretation, the *Sestile* plaintiffs did not make any demands on the court to make a sweeping
declaration against an industry-wide practice; rather, the *Sestile* plaintiffs merely asked the court "to find
that State Farm's use of a computer-generated database to determine the reasonableness of medical bills
violated [Fla. Sta. § 627.736] and the insurance contract."  *Sestile*, 821 So. 2d at 1245.  Plaintiffs appear
to be seeking the same narrow relief as the *Sestile* plaintiffs.

reasonableness does or does not comply with the statute." *Sestile*, 821 So. 2d at 1246.  Further, when the legislature does not provide guidance as to what is reasonable, the court explained that it is the fact-finder's responsibility to determine reasonableness and, then, whether the insurance company's evaluation was reasonable on a case-by-case basis.  "In some cases, a computer database may accurately assess the reasonableness of a medical provider's bill; in other cases, it may be far from the mark."  *Id.*  Thus, it would be necessary for the Court to analyze each class member's claim to determine whether the partial reimbursement was reasonable.

Lastly, when seeking class certification, Plaintiffs must make an effort "to suggest a plan regarding how the present case could be handled in a manageable way in view of the necessity to apply the laws of fifty-one jurisdictions." *Ford Motor*, 174 F.R.D. at 350.  In other words, "movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'the class certification does not present insuperable obstacles.'" *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (quoting *School Asbestos*, 789 F.2d at 1010).

The *Ford Motor* plaintiffs brought an action against the defendants alleging that the defendants manufactured vehicles with faulty ignition switches, which caused fire damage when a short circuit occurred.  Plaintiffs sought class certification, which the court denied without prejudice.  In a subsequent proceeding, the plaintiffs proposed an amended class definition that contemplated two specific subclasses, but the court still denied class certification because the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(3) were not met.  In the first matter, the court denied class certification, reasoning that a class action would be unmanageable and impractical.  The court found that the plaintiffs did "not explain[] how their multiple causes of action could be presented to a jury for resolution in a way that fairly represents the law of the

fifty states while not overwhelming the jurors with hundreds of interrogatories and a verdict form as large as an almanac." *Ford Motor* at 350.

Here, Plaintiffs have not suggested any blueprint for case management other than highlighting the possible common issues of law or fact.  Plaintiffs have failed to address how the Court could effectively manage this class, with thousands of potential plaintiffs, in states across the country.  There is no litigation plan that puts forth a proposal regarding the variations in state law and individualized issues, and how the Court can effectively and efficiently try the case. "Each individual plaintiff's claim raises radically different factual and legal issues from those of other plaintiffs.  These differences, when exponentially magnified by choice of law considerations, eclipse any common issues in this case.  In such circumstances, the predominance requirement of Rule 23(b) cannot me met." *Georgine* 83 F.3d at 618.  For the same reasons expressed by the *Georgine* court, the Court cannot certify the class.

>        b.        <u>Superiority</u>

Superiority requires that the class action is superior to all other means of resolving the controversy and achieves a "fair and efficient adjudication of the controversy."  FED. R. CIV. P. 23(b)(3).  In evaluating whether a class action is the superior means for adjudication, a court must consider "the desirability or undesirability of concentrating litigation of the claims in the particular forum...[and] the difficulties likely to be encountered in the management of the class action."  *Id*.  Manageability of a class action "encompasses 'the whole range of practical problems that may render the class action format inappropriate for a particular suit.'"  *Newton*, 259 F.3d at 191 (quoting *Eisen*, 417 U.S. at 164).

The Court determines that a class action is not superior to all other means of resolving the present controversy.  As previously discussed, this type of action involves an individualized inquiry into each of the claims to determine whether actual injury occurred to each insured.  Furthermore, Defendants would have the right to raise defenses against each individual claim.  Plaintiffs allege that there are thousands of potential class members; from a manageability standpoint, it is hard to imagine how this case could be tried efficiently and effectively.

**IV.     Conclusion**

For the reasons stated above, the Court finds (a) that the arbitration provisions within the policies are binding and Minnesota law mandates arbitration, (b) the doctrine of *forum non conveniens* allows for dismissal, and (c) Plaintiffs are not entitled to class certification.  Thus, Defendants' motion to dismiss Plaintiffs' Complaint is granted.  An appropriate order follows.


/s/ JOEL A. PISANO____
United States District Judge


Dated: August 26, 2008